# In the
# United States Court of Appeals
# for the Federal Circuit

**SAMSUNG ELECTRONICS CO., LTD.,**
**SAMSUNG ELECTRONICS AMERCIA, INC.,**
*Appellants,*

v.

**RESONANT SYSTEMS, INC.,**
*Cross-Appellant.*

———————

On Appeal from the Patent Trial and Appeal Board in
*Inter Partes* Review Nos. IPR2023-00992, IPR2023-00993

———————

**PATENT OWNER-APPELLANT RESONANT SYSTEMS, INC.'S
PRINCIPAL AND RESPONSE BRIEF**

———————

Reza Mirzaie
rmirzaie@raklaw.com
Neil A. Rubin
nrubin@raklaw.com
Kristopher R. Davis
kdavis@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd.,12th Floor
Los Angeles, CA 90025
Tel: (310) 826-7474
Fax: (310) 826-6991

*Attorneys for Patent Owner-
Cross-Appellant Corephotonics, Ltd.*

Dated: September 19, 2025

# EXEMPLARY CLAIM LANGUAGE
## U.S. PATENT NO. 9,369,081

1. [1pre] A linear vibration module comprising:

   [1A] a housing;

   [1B] a moveable component;

   [1C] a power supply;

   [1D] user-input features;

   [1E] a driving component that drives the moveable component in each of two opposite directions within the housing; and

   [1F] a control component that controls supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by user input received from the user-input features.

2. [2pre] The linear vibration module of claim 1 wherein the control component is one of:

   [2A] an variable oscillator circuit with additional control circuitry; and

   [2Bi] a control component that includes a microprocessor,

   [2Bii] a control program, stored in an electronic memory within, or separate from, the microprocessor, the control program executed by the microprocessor to control supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by user input received from the user-input features.

3. The linear vibration module of claim 1 wherein the control component receives output signals from sensors within the linear vibration module during operation of the linear vibration module and adjusts one or

more operational control outputs of the control component according to the received output signals from the sensors.

4. The linear vibration module of claim 1[1] wherein the control component adjusts the one or more operational control outputs of the control component according to the received output signals from the sensors in order that subsequent operation of the linear vibration module produces desired outputs from the one or more sensors corresponding to one or more operational control parameters.

5. [5A] The linear vibration module of claim 4 wherein the one or more operational control parameters is a strength of vibration produced by the linear oscillation of the moveable component; and

   [5B] wherein the one or more operational control outputs is a frequency at which the control component drives the moveable component to linearly oscillate, the control component dynamically adjusting the power supplied to the driving component to produce linear oscillation of the movable component at a resonant frequency for the linear vibration module.

6. [6A] The linear vibration module of claim 4 wherein the one or more operational control parameters include both a strength of vibration produced by the linear oscillation of the moveable component and a current operational mode; and

   [6B] wherein the one or more operational control outputs is a control output that determines a current supplied by the power supply to the driving component and a frequency at which the control component drives the moveable component to linearly oscillate.

7. The linear vibration module of claim 1 wherein the driving component comprises one or more electromagnetic coils that generate magnetic

---

[1] Resonant believes that this reference to claim 1 is a typographical error and should be read as claim 3. Both Samsung and the Board agreed that claim 4 could be treated as depending from claim 3 for the purposes of this IPR. Appx44.

fields parallel to the directions in which the moveable component is driven by the driving component.

8. [8A] The linear vibration module of claim 1 wherein the housing is a linear tube, capped at both ends by movable-component-repelling components selected from one of mechanical springs and magnets;

[8B] wherein the movable component is a magnet shaped to slide within the linear tube; and

[8C] wherein the driving component is an electromagnetic coil.

9. [9A] The linear vibration module of claim 1 wherein the housing is a linear tube, capped at both ends by movable-component-repelling components; and

[9B] wherein the moveable component includes an electromagnetic-coil driving component and microprocessor.

11. The linear vibration module of claim 1 wherein the linear vibration module further includes two or more driving components, each, when activated, driving the moveable component to linearly oscillate with an amplitude particular to the activated driving component.

14. The linear vibration module of claim 1 further including flux paths comprising a paramagnetic material that is shaped and positioned to reduce the reluctance of one or more magnetic circuits within the linear vibration module.

17. The linear vibration module of claim 1 wherein the control component controls supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude that are independently specified by user input received from the user-input features.

# U.S. PATENT NO. 9,369,081

1. [1pre] A vibration module comprising:

   [1A] a housing;

   [1B] a moveable component;

   [1C] a power supply;

   [1D] user-input features;

   [1E] a driving component that drives the moveable component to oscillate within the housing; and

   [1F] a control component that controls supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by one or more stored values.

2. [2pre] The vibration module of claim 1 wherein the control component is one of:

   [2A] an variable oscillator circuit with additional control circuitry; and

   [2Bi] a control component that includes a microprocessor,

   [2Bii] a control program, stored in an electronic memory within, or separate from, the microprocessor, the control program executed by the microprocessor to control supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by the one or more stored values.

3. The vibration module of claim 1 wherein the control component receives output signals from sensors within the vibration module during operation of the vibration module and adjusts one or more operational control outputs of the control component according to the received output signals from the sensors.

4. The vibration module of claim 1[2] wherein the control component adjusts the one or more operational control outputs of the control component according to the received output signals from the sensors in order that subsequent operation of the vibration module produces desired outputs from the one or more sensors corresponding to one or more operational control parameters.

5. [5A] The vibration module of claim 4 wherein the one or more operational control parameters is a strength of vibration produced by the oscillation of the moveable component; and

[5B] wherein the one or more operational control outputs is a frequency at which the control component drives the moveable component to oscillate, the control component dynamically adjusting the power supplied to the driving component to produce oscillation of the movable component at a resonant frequency for the vibration module.

6. [6A] The linear vibration module of claim 4 wherein the one or more operational control parameters include both a strength of vibration produced by the oscillation of the moveable component and a current operational mode; and

[6B] wherein the one or more operational control outputs is a control output that determines a current supplied by the power supply to the driving component and a frequency at which the control component drives the moveable component to oscillate.

7. The vibration module of claim 1 wherein the driving component comprises one or more electromagnetic coils that generate magnetic fields parallel to the directions in which the moveable component is driven by the driving component.

---

[2] Resonant believes that this reference to claim 1 is a typographical error and should be read as claim 3. Both Samsung and the Board agreed that claim 4 could be treated as depending from claim 3 for the purposes of this IPR. Appx162.

8. [8A] The vibration module of claim 1 wherein the housing is a tube, capped at both ends by movable-component-repelling components selected from one of mechanical springs and magnets;

   [8B] wherein the movable component is a magnet shaped to slide within the tube; and

   [8C] wherein the driving component is an electromagnetic coil.

9. [9A] The linear vibration module of claim 1 wherein the housing is a tube, capped at both ends by movable-component-repelling components; and

   [9B] wherein the moveable component includes an electromagnetic-coil driving component and microprocessor.

11. The vibration module of claim 1 wherein the vibration module further includes two or more driving components, each, when activated, driving the moveable component to oscillate with an amplitude particular to the activated driving component.

14. The vibration module of claim 1 further including flux paths comprising a paramagnetic material that is shaped and positioned to reduce the reluctance of one or more magnetic circuits within the vibration module.

15. The vibration module of claim 1 wherein the control component drives simultaneous oscillation of the moveable component at two or more frequencies to generate complex vibration modes.

16. The vibration module of claim 15 wherein the complex vibration modes include:

   a primary oscillation frequency modulated by a modulating oscillation frequency;

   a beat frequency; and

   an aperiodic oscillation waveform.

17. The vibration module of claim 1 wherein the control component controls supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude that are independently specified by user input received from the user-input features.

19. [19pre] A vibration module comprising:

[19A] a housing;

[19B] a moveable component;

[19C] a power supply;

[19D] user-input features;

[19E] a driving component that drives the moveable component to oscillate within the housing; and

[19F] a control component that controls supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by one or more stored values; and

[19G] flux paths comprising a paramagnetic material that is shaped and positioned to reduce the reluctance of one or more magnetic circuits within the vibration module.

20. [20pre] A vibration module comprising:

[20A] a housing;

[20B] a moveable component;

[20C] a power supply;

[20D] user-input features;

[20E] a driving component that drives the moveable component to oscillate within the housing; and

[20F] a control component that controls supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by one or more stored values,

[20G] wherein the control component drives simultaneous oscillation of the moveable component at two or more frequencies to generate complex vibration modes.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

**Case Number** 2025-1547, 2025-1549, 2025-1550, 2025-1551

**Short Case Caption** Samsung Electronics Co., Ltd. v. Resonant Systems, Inc.

**Filing Party/Entity** Resonant Systems, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/19/2025

Signature: /s/ Neil A. Rubin

Name: Neil A. Rubin

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Resonant Systems, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

x

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| Jason Wietholter Russ August & Kabat | | |
|---|---|---|
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)   ☐   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

EXEMPLARY CLAIM LANGUAGE................................................ i

CERTIFICATE OF INTEREST.................................................. ix

TABLE OF CONTENTS ........................................................ xii

TABLE OF AUTHORITIES ....................................................xv

STATEMENT OF RELATED CASES....................................... xvii

STATEMENT OF JURISDICTION........................................ xviii

STATEMENT OF THE ISSUES ON CROSS APPEAL.................. 1

STATEMENT OF THE CASE................................................... 1

    A.    The Parties' "Control Component" Claim Construction
Positions Before the PTAB...................................... 1

    B.    The Board's Constructions of "Control Component"............. 4

    C.    Samsung's Shifting Positions in District Court .................... 5

    D.    The IPR Petitions Failed to Provide Any Evidence That the
Prior Art Taught the Algorithms That Samsung Proposed in
District Court or That the District Court Adopted ............... 8

SUMMARY OF THE ARGUMENT ............................................. 9

STANDARD OF REVIEW.........................................................13

ARGUMENT .......................................................................14

    I.    The Court Should Expressly Adopt a Construction for "Control
Component" and Either Vacate or Affirm Based Upon that
Construction ............................................................... 14

II. The Board Correctly Relied Upon What the Petitions Actually Said in Rejecting the Ground 1D-1F Challenges to Claims 3–6 ................................................................................... 18

   A. Samsung's Resorts to a Fanciful Rewriting of Its Petition to Insert New Arguments into It............................................... 18

   B. Even as Samsung Seeks to Rewrite It, the Petition Failed to Show that Fukumoto, Ueda, or Their Combination Taught the Added Algorithm Steps ................................................... 23

III. The Board Correctly Recognized that the Petitions Failed to Provide Any Analysis of Claims 3–6 Under Ground 2D that Was Independent of the Analysis in Grounds 1D–F ............... 24

IV. The Board Properly Rejected Samsung's Reply Theories Concerning Purported Knowledge of a POSITA and Claim 3 . 28

   A. Samsung Asks This Court to Reverse the Board Based Upon Grounds that Were Properly Not Part of the Petitions' Obviousness Challenges ........................................................ 28

   B. Dr. Wolfe's Untimely and Conclusory Opinions in Reply Concerning Want a "POSITA Would Have Understood" Fail to Demonstrate that the Prior Art References in Combination Teach the Steps Required by Claim 3 ............ 30

V. The Board Properly Rejected New Arguments Made on Reply Based Upon Purported Evidence of Prior Art Outside of the Patents and Printed Publications, but to the Extent Such Rejection Was Erroneous It Was Harmless Error as the Board also Correctly Rejected These Arguments on Their Merits ..... 32

VI. The Board's Factual Findings Concerning Combining Distinct Embodiments of Fukumoto to Satisfy Claim 9 Are Supported by Substantial Evidence, and Samsung's Untimely Reliance on Additional Portions of Fukumoto Does Not Demonstrate Otherwise...................................................................................... 35

VII.  The Board Correctly Found a Lack of Motivation to Combine
      Fukumoto, Dong, and Ogusu as Proposed to Satisfy Claims 14
      and 19.......................................................................................... 37

CONCLUSION ............................................................................................42

CERTIFICATE OF COMPLIANCE.............................................................44

# TABLE OF AUTHORITIES

## Cases

*Apple Inc. v. Andrea Electronics Corporation,*
    949 F.3d 697 (Fed. Cir. 2020)............................................................ 34

*Ariosa Diagnostics v. Verinata Health, Inc.,*
    805 F.3d 1359 (Fed. Cir. 2015)........................................................ 35

*Belden Inc. v. Berk-Tek LLC,*
    805 F.3d 1064 (Fed. Cir. 2015).......................................................... 38

*Ericsson Inc. v. Intellectual Ventures I LLC,*
    901 F.3d 1374 (Fed. Cir. 2018)........................................................... 34

*Harmonic Inc. v. Avid Tech., Inc.,*
    815 F.3d 1356 (Fed. Cir. 2016)..................................................... 20, 27

*In re Stepan Co.,*
    868 F.3d 1342 (Fed. Cir. 2017).......................................................... 38

*Intel Corporation v. PACT XPP Schweiz AG,*
    61 F.4th 1373 (Fed. Cir. 2023) .......................................................... 40

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.,*
    821 F.3d 1359 (Fed. Cir. 2016)....................................... 31, 33, 35, 41

*Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n,*
    22 F.4th 1369 (Fed. Cir. 2022) .................................................... 13, 16

*Markman v. Westview Instruments, Inc.,*
    517 U.S. 370 (1996).............................................................................. 14

*Qualcomm Incorporated v. Apple Inc.,*
    134 F.4th 1355 (Fed. Cir. 2025) ........................................... 29, 31, 33

*SAS Inst., Inc. v. Iancu,*
    584 U.S. 357 (2018)....................................................................... 21, 27

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
 574 U.S. 318 (2015)........................................................................... 13, 14

*Virtek Vision Int'l ULC v. Assembly Guidance Sys., Inc.*,
 97 F.4th 882 (Fed. Cir. 2024) ............................................................. 38

*Williamson v. Citrix Online, LLC*,
 792 F.3d 1339 (Fed. Cir. 2015)............................................................. 2

*ZyXEL Commc'ns Corp. v. UNM Rainforest Innovations*,
 107 F.4th 1368 (Fed. Cir. 2024) .......................................................... 38

## Statutes and Regulations

35 U.S.C. § 112 ..................................................................................... 2

35 U.S.C. § 311 ............................................................................... 29, 31

35 U.S.C. § 312 ........................................................................ 20, 25, 27

37 C.F.R. § 42.100 ............................................................................... 15

37 C.F.R. § 42.104 ............................................................... 25, 27, 29, 31

37 C.F.R. § 42.23 ................................................................................. 30

## STATEMENT OF RELATED CASES

No appeal in or from the same IPR proceedings has previously been before this Court or any other appellate court.

This consolidated appeal relates to U.S. Patent Nos. 9,369,081 (the "'081 patent") and 9,941,830 (the "'830 patent") (collectively, the "Challenged Patents"). Resonant has asserted (and continues to assert) certain claims of the Challenged Patents against Samsung in *Resonant Systems Inc. d/b/a RevelHMI v. Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*, No. 2:22-cv-00423 (E.D. Tex.), which may be affected by this Court's decision on appeal. Resonant has also asserted (and continues to assert) certain claims of the '830 patent against Apple in *Resonant Systems, Inc., d/b/a RevelHMI v. Apple, Inc.*, No. 7:23-cv-00077 (W.D. Tex.), which may also be affected by this Court's decision on appeal.

## STATEMENT OF JURISDICTION

This is an appeal from a final written decision of the Patent Trial and Appeal Board of the United States Patent and Trademark Office. This Court has jurisdiction over this appeal under 35 U.S.C. §§ 141(c) and 319 and 28 U.S.C. § 1295(a)(4)(A).

## STATEMENT OF THE ISSUES ON CROSS APPEAL

1.     Whether the Board's two-step algorithm means-plus-function construction for the term "control component" (based in part upon the construction advanced by Samsung in its IPR petition) was correct, or whether the district court's narrower nine-step algorithm means-plus-function construction (based upon the construction subsequently advanced by Samsung in that court) was instead correct.

2.     To the extent that the nine-step algorithm or another algorithm requiring specific steps from the patent figures is the correct construction, whether the evidence in the IPR petitions demonstrates any of the claims of the challenged patents is obvious.

## STATEMENT OF THE CASE

### A.     The Parties' "Control Component" Claim Construction Positions Before the PTAB

In its IPR petitions filed June 14, 2023, Samsung proposed constructions for the term "control component," as it appeared in the independent claims of each patent and in claim 3 of each patent. Appx301–303, Appx1949–1950. In particular, Samsung argued that these terms should each be construed as means-plus-function terms, because the presumption against a claim term without the word "means" being governed by

35 U.S.C. § 112(6) was overcome. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015).

Samsung proposed the following specific constructions, without providing substantive argument in favor of the specific constructions:

| Limitation | Corresponding Structure |
| --- | --- |
| '081 claim 1, '830 claims 1, 19, 20: "a control component that controls supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by [user input received from the user-input features / one or more stored values]" | Processor and H Bridge Switch, where processor is programmed with an algorithm to perform the following steps: (1) set the mode and strength to values represented by selections made by user input to the user input features, (2) provide a corresponding output to the power supply, and (3) provide a corresponding output to the H-bridge switch. EX1001, [7:10–24, 8:10–20 / 7:20–34, 8:20–30], Fig. 7A, Fig. 7C. |
| '081 claim 3, '830 claim 3: "wherein the control component receives output signals from sensors within the [linear] vibration module during operation of the linear vibration module and adjusts one or more operational control outputs of the control component according to the received output signals from the sensors" | Claim 1 structure with the processor further programmed with an algorithm to perform the following steps: (1) convert the received output signal into an integer, (2) compare that integer to a specific value, (3) adjust one or more operational control outputs based on that comparison. EX1001, [7:13–18, 7:32–8:9 / 7:24–29, 7:42–8:19], Figs. 7A, 7B. |

Appx302–303, Appx1950.

In the petitions, Samsung provided an analysis of how the prior art met these terms under the respective three-step algorithms of Samsung's propose corresponding structure. Appx316–318, Appx345–346, Appx379, Appx1963–1965, Appx1992–1993, Appx2026.

In its responses, Resonant provided competing constructions. In particular, for the corresponding algorithm for the independent claim terms, Resonant proposed a two-step algorithm:

> (a) set the mode and strength to [default values or] values representing selections made by user input to the user input features; and (b) provide a corresponding output to the power supply so that the power supply provides a corresponding output to the driving component See, e.g., '081 Patent at 7:10–24, 8:10–20, Figs. 7A, 7C; '830 Patent at 7:20–34, 8:20–30, Figs. 7A, 7C.

Appx2674, Appx3104. For the terms in claim 3 of each patent, Resonant proposed a three-step algorithm that was similar to Samsung's three-step algorithm, except that it was not necessary for the algorithm to operate on integers:

> (a) receive the value of an output signal; (b) compare that value to a different value, which could be a previous value; and (c) adjust one or more operational control outputs based on that comparison

Appx2680, Appx3110. In its replies, Samsung argued in favor of the constructions in its petitions, offering substantive argument for why its

three-step algorithms were the correct corresponding structures. Appx3189–3190, Appx3391–3393. In its sur-replies, Resonant further addressed these claim construction issues, including by pointing out the Board's constructions in its denials of institution of IPRs brought by Sony challenging the same patents and agreeing that Samsung's proposed algorithm would be sufficient to perform the claimed function. Appx3430–3433, 3520–3522.

## B. The Board's Constructions of "Control Component"

In its final written decisions, the Board expressly construed each of these "control component" terms. For "control component" in the independent claims, the Board agreed that the term was a means-plus-function term. Appx30, Appx156. For the corresponding algorithm, the Board adopted Resonant's proposed two-step algorithm. Appx31–32, Appx157. In doing so, the Board walked through the Figures 7A–7C and corresponding specification text in order to identify the algorithm steps that perform the recited function. Appx32–36, Appx157.

For control component in claim 3 of each patent, the Board likewise agreed that the term was a means-plus-function term. Appx41, Appx159.

The Board adopted a construction with the algorithm steps proposed by Samsung in its petition. Appx 41, Appx161.

### C. Samsung's Shifting Positions in District Court

Claim construction in the district court occurred in two distinct stages. This is because on March 8, 2024, the district court stayed the case pending final resolution of the pending IPRs. Appx3914. Prior to this stay being entered, the parties had submitted claim construction briefs. In those briefs, Resonant advanced constructions with the same algorithm steps as it proposed in the IPRs. Appx3898–3899, Appx3904–3905. Samsung also advanced constructions with algorithm steps very similar to those it proposed in the IPRs, with the difference that its district court construction removed the requirement of an H-bridge switch. Appx3898–3899, Appx3904–3905.

After the stay was lifted and with final written decisions in hand invalidating certain claims of the challenged patents under two- and three-step algorithms, Samsung dramatically shifted course. For the independent claim algorithms, replaced its three-step construction with constructions each requiring many more steps. For the '830 patent, Samsung proposed:

> the algorithm shown in Figure 7A excluding steps 710-712, and 718-724, with reference to all steps shown in Figure 7C, or the algorithm described in the corresponding text. See, e.g., '830 patent at 6:52-7:29, 7:31-7:34, 8:20-8:40, and equivalents thereof.

Appx3938–3939. Reference to the figures reveals that the '830 patent proposed construction requires nine steps: 702, 704, 706, 708, 714, 716, 760, 762, 764. Appx257–259. For the '081 patent, Samsung proposed:

> the algorithm shown in Figure 7A excluding steps 718-724, with reference to all steps shown in Figure 7B excluding Step 734, and all steps shown in Figure 7C, or the algorithm described in the corresponding text. See, e.g., '081 patent at 6:43-7:24, 7:32-7:42, 7:50-8:30, and equivalents thereof.

Appx3945–3946. Reference to the figures reveals that the '081 patent proposed construction requires twenty-three steps: 702, 704, 706, 708, 710, 712, 714, 716, 730, 732, 736, 738, 740, 742, 744, 746, 748, 750, 752, 754, 760, 762, 764. Appx226–228. For claim 3 of each patent, Samsung likewise proposed constructions requiring dozens of steps:

> the algorithm shown in Figure 7A excluding steps 718-724, with reference to all steps shown in Figure 7B excluding Step 734, and all steps shown in Figure 7C, or the algorithm described in the corresponding text. See, e.g., '830 patent at 6:52-7:34, 7:42-7:52, 7:60-8:40, and equivalents thereof.

Appx3950. This construction requires the same twenty-three steps as the '081 patent independent claim construction above.

The reason for Samsung's change in position, to require a vastly greater number of steps in each construction, seems readily apparent. Having tried and failed to invalidate all claims of these patents under relatively broad three-step construction at the PTAB, Samsung now chose to focus on avoiding infringement in the district court, by adopting far narrower 9- or 23-step algorithms for its new constructions there.

On August 20, 2025, the district court issued a claim construction order, largely following Samsung's proposed constructions. As the court noted, Resonant had pointed out the inconsistency in Samsung's positions in district court post-stay with its earlier positions in both the PTAB and district court, but the court found this argument unpersuasive. Appx3983. For the independent claims of both the '081 and '830 patents, the court adopted a construction requiring steps 702, 704, 706, 708, 714, and 716 of Figure 7A and steps 760, 762, and 764 of Figure 7C. Appx3981–3985. As noted above, these nine steps are the steps required in Samsung's post-stay proposed district court construction for the '081 patent. For claim 3 of each patent, the court adopted a construction requiring the steps of Figure 7B except 734, i.e. requiring the twelve steps 730, 732, 736, 738, 740, 742, 744, 746, 748, 750, 752, and 754. Appx3987.

As these steps are in addition to the nine steps required for claim 1 of each patent, the end result is that claim 3 of each patent requires twenty-one steps under the court's construction.

### D. The IPR Petitions Failed to Provide Any Evidence That the Prior Art Taught the Algorithms That Samsung Proposed in District Court or That the District Court Adopted

As noted above, Samsung's petitions presented an obviousness analysis based upon the broad three-step constructions it advanced for the "control component" terms. Appx316–318, Appx345–346, Appx379, Appx1963–1965, Appx1992–1993, Appx2026. Neither the petitions nor the replies attempted to show that specific steps set forth in Figures 7A–7C of the patents were satisfied by the prior art in the proposed combinations.

Nor could Samsung have done so. For example, each of steps 706 ("frequency timer expired?"), 710 ("monitor timer expiration?"), and 764 ("compute and reset monitor timer interval") involve a timer. Appx226, Appx228, Appx257, Appx259. But neither the petitions nor the replies mention a timer, except in a single quote from the specification of each challenged patent when arguing claim construction. Appx3190,

Appx3392. Moreover, none of the Fukumoto, Grant, Barton, or Ogusu patents used in combinations asserted against the independent claims of the challenged patents mentions a "timer."

Accordingly, the narrow claim construction for "control component" advanced by Samsung in the district court and adopted by the district court is inconsistent with any of the claims being found obvious on the grounds asserted in these IPRs. The counsel who signed the district court brief advancing that narrow construction in district court is the same counsel that signed Samsung's opening brief in this appeal. Appx3962, Blue Br. 69.

## SUMMARY OF THE ARGUMENT

The Board's determination that the independent claims and certain dependent claims of the '081 and '830 patents were unpatentable rests on its claim construction for the means-plus-function term "control component" in the independent claims. This construction was based in part on—and broader than—the construction advanced by Samsung in its petitions.

Following the final written decisions in these IPRs, Samsung—through its counsel in this very appeal—disavowed its broad approach to

claim construction for these patents, switching instead to a narrow non-infringement driven construction that required many more specific steps, taken from the figures of the patents. Based upon arguments that Samsung made for the first time in the district court after the IPR final written decisions, the district court agreed to a narrow, multistep construction based upon Samsung's proposal.

Both the constructions of "control component" in the IPRs and in the district court were based upon the same intrinsic record of the patents, without resort to facts determined from extrinsic evidence. Both were decided under the same *Phillips* claim construction standard. Review by this Court of both is or will be *de novo*. Samsung's positions in both *should* have been the same, and the correct construction should be the same in both.

Accordingly, the Court should adopt the district court construction for "control component" that was advocated by Samsung, based upon the arguments that Samsung made for the first time in district court. Because the prior art combinations asserted in these IPRs clearly fail to satisfy multiple steps of the algorithm in this construction, the Board's determinations that claims were found unpatentable should be vacated

and its determinations that other claims were not shown unpatentable affirmed.

However, to the extent that the Court declines to adopt the district court construction in this appeal, either due to waiver or because it rejects that construction on substance, the Court should expressly construe the "control component" term in a way that is binding both in this appeal and in the pending district court litigation. Resonant should not be faced with losing patent claims under an implicit claim construction by the Federal Circuit in this case, only for Samsung to argue that this Court should affirm a different, narrower construction in any appeal from the district court case.

With respect to Samsung's appeal of the Board's determinations that claims 3–6, 9, 14, and 19 in the challenged patents were not shown to be unpatentable, the Court should affirm these determinations by the Board in full, as they are supported by substantial evidence. The Board correctly understood the theory of obviousness and of motivation to combine that was presented in the petitions under the combination of Fukumoto and Ueda asserted against claims 3–6. Samsung's attempts to rewrite the arguments that were presented in the petitions through selective quotation

and implausible interpretation of those petitions on appeal should be rejected. Samsung's attempt to build a whole new obviousness theory based upon a combination of Fukumoto, Ueda, and Ogusu that merited less than a page in each petition should likewise be rejected.

Samsung's new theory of obviousness for claims 3–6 in its replies, based upon its expert's conclusory assertions as to "knowledge of a POSITA" were properly rejected by the Board, as they are both untimely evidence of a motivation to combine and untimely evidence from outside the statutory scope of a proper IPR challenge forming part of the grounds for an obviousness challenge. However, even if this rejection were improper under the applicable abuse of discretion standard, it was harmless error, as the Board in fact considered the new theory and found that it failed on its merits.

Samsung's arguments concerning the obviousness of claim 9 were properly rejected by the Board as Samsung failed to demonstrate a motivation to combine the two distinct embodiments of Fukumoto in a way that would satisfy the claim. At the very least, the Board's determination was supported by substantial evidence. Likewise, the Board correctly found that Samsung had failed show the unpatentability of claims 14 and

19, because it correctly found that Samsung had failed to establish a motivation to combine the references in a way that would satisfy these claims. At the very least, this determination too was supported by substantial evidence. Accordingly, the Board's findings of failure to demonstrate unpatentability should all be affirmed.

## STANDARD OF REVIEW

Claim construction is a question of law based upon underlying factual findings. This Court reviews the legal conclusions of claim construction *de novo* and any underlying factual findings for clear error. *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326–27 (2015). "We review claim construction de novo and review any subsidiary factual findings based on extrinsic evidence for substantial evidence." *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1378 (Fed. Cir. 2022).

The standards of review for obviousness and for compliance with the Board's procedures are as set forth in Samsung's opening brief. Blue Br. 39–40.

## ARGUMENT

### I. The Court Should Expressly Adopt a Construction for "Control Component" and Either Vacate or Affirm Based Upon that Construction

The ultimate construction of the terms of the patents claims is a question of law, reviewed *de novo* by this Court. *Teva*, 574 U.S. at 326–27. In *Markman*, the Supreme Court noted that "we see the importance of uniformity in the treatment of a given patent as an independent reason to allocate all issues of construction to the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996) ("[t]he limits of a patent must be known for the protection of the patentee, the encouragement of the inventive genius of others and the assurance that the subject of the patent will be dedicated ultimately to the public." (internal citation omitted)). The Court further pointed to the goal of uniformity in the interpretation of patents as a reason for the very creation of the Federal Circuit. *Id.*

As explained above, the Board adopted two-step algorithms for the corresponding structure of the means-plus-function terms "control component" in the independent claims of the challenged patents. Appx31–32,

Appx157. Based upon these constructions, the Board found the independent claims and numerous dependent claims of each patent unpatentable. Appx138–144, Appx211–215.

In the parallel district court case, based upon arguments advanced in a brief signed by Samsung's lead counsel in this appeal, Samsung advanced a narrower construction for "control component" requiring nine specific steps from the patents' figures. Appx3938–3939, Appx3962. The district court adopted this nine-step construction. Appx3981–3985. As explained above, these nine steps include three steps that require a "timer," something not addressed in the petitions' or replies' analyses of the prior art and not mentioned in any of the Fukumoto, Grant, Barton, or Ogusu references asserted against the independent claims.

The standard for claim construction in these IPRs was the same as that which applies in district court. 37 C.F.R. § 42.100(b). Both the PTAB claim constructions and the district court claim constructions were grounded in the actual language of the patent claims, specifications, and figures, and neither rested on any factual findings based upon extrinsic evidence. Appx31–36, Appx156–157, Appx3984–3985. Accordingly, review of either construction by this Court is *de novo*. *Kyocera*, 22 F.4th at

1378. Put another way, for the purposes of appeals to this Court of the IPRs and of any subsequent appeal of a decision in district court, the construction of "control component" in the independent claims should be the same.

For this reason and to ensure consistency and uniformity of outcomes, this Court should expressly construe the term "control component" in the independent claims. Otherwise, if the invalidation of certain claims of the challenged patents is affirmed without express construction, Resonant faces the possibility of appealing a result from the district court case only to have Samsung argue to this Court that the construction of "control component" should be something other than the construction under which this Court implicitly affirmed the invalidation of claims by the Board.

Resonant believes that the correct decision would be for the Court to adopt the district court construction, based upon the proposal advanced in district court by Samsung's counsel in this appeal. Appx3981–3985. The district court expressly found that the algorithm taught in the specification required a "frequency timer" and related steps. Appx3982–3983.

While the PTAB made no similar finding, that is because neither Samsung nor Resonant argued that the frequency timer was required in the IPRs. While ordinarily Resonant's failure to argue for a claim construction including the timer steps before the PTAB may result in waiver of the issue on appeal, that waiver should be excused where it was Samsung that first raised the issue in district court, after the IPR final written decisions had issued. Because Samsung did not and could not have argued that the asserted prior art combinations satisfied the timer-related steps of the nine-step construction in the IPR, the Court should vacate the Board's determinations that certain claims are unpatentable and affirm the Board's determinations that other claims were not shown unpatentable. Any remand to the Board would be futile.

Alternatively, the Court could affirm the Board's construction. Resonant did after all argue for the Board's two-step algorithm construction and win on this issue in the IPR. Appx31–32, Appx157, Appx2674, Appx3104. However, to the extent that the Board declines to reverse the Board's determination that certain claims were unpatentable, it should do so after first expressly construing the term "control component" in the independent claims.

## II. The Board Correctly Relied Upon What the Petitions Actually Said in Rejecting the Ground 1D-1F Challenges to Claims 3–6

### A. Samsung's Resorts to a Fanciful Rewriting of Its Petition to Insert New Arguments into It

For claim 3, the Board adopted Samsung's proposed means-plus-function construction for "control component," which added three further steps to the algorithm required for the "control component" of claim 1. Appx39–41, Appx159–161. These steps included to "(1) convert the received output signal into an integer" and "(2) compare that integer to a specific value." In each petition, Samsung's argument for why the purportedly obvious combination would satisfy these additional algorithmic steps consists of a single paragraph. Appx345–346, Appx1992–1993. The paragraph recites a number of purported teachings of the Ueda reference and concludes with the statement:

> For the reasons discussed above, Ueda teaches a processor programmed with the additional algorithm steps[, a]nd a POSITA would have been motivated to use Ueda's feedback control (which includes those additional steps) with the linear oscillatory actuator of Fukumoto, so that Fukumoto's mobile device more reliably delivers vibrations at the desired frequency and amplitude.

Appx345–346, Appx1992–1993.

This paragraph in each petition plainly points to Ueda as the sole source of teaching for the added steps of claim 3, including those steps involving integers. Fukumoto is only mentioned at the very end of each paragraph, as having a "linear oscillatory actuator" within its mobile device. There is no suggestion whatsoever that Fukumoto teaches or renders obvious the added algorithm steps or that it would motivate some modification to Ueda's teachings such that the combination would utilize the added steps even if Ueda did not. Rather, the petitions are explicit that their theory of obviousness rests on the contention that "Ueda teaches a processor programmed with the additional algorithm steps."

In its appeal, Samsung makes the remarkable argument that the Board erred by accepting Samsung's own characterization—in its petitions—of the grounds for its challenges to claim 3 and its dependent claims. According to Samsung, the statement "Ueda teaches a processor programmed with the additional algorithm steps" could not possibly be read to mean that Samsung was relying upon Ueda as teaching the additional algorithm steps, because the petition failed to show that Ueda teaches a processor. Blue Br. 42.

In particular, Samsung focuses on the phrase "[f]or the reasons discussed above, Ueda teaches a processor." Blue Br. 42 (citing Appx345–346, Appx1992–1993). According to Samsung, the Board should have recognized it was false that Ueda teaches a processor, because nothing in the petitions actually shows that Ueda teaches a processor. Blue Br. 42. Indeed, Samsung's brief refers to "Ueda's Alleged 'Processor,'" as if it were Resonant or the Board that wrote the words "Ueda teaches a processor programmed with the additional algorithm steps," rather than Samsung in its petitions. *Id.* Upon recognizing that Ueda does not teach the "alleged" processor—Samsung argues—the Board should have effectively rewritten the petitions as saying that it is Fukumoto that teaches the processor of claim 3. *Id.* Indeed, Samsung contends that it was reversible error, under the abuse of discretion standard, for the Board to fail to so rewrite the petitions.

This argument is contrary to law. The petitioner has the burden to clearly set forth the basis for its challenges in the petition. *Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1363 (Fed. Cir. 2016) (citing 35 U.S.C. § 312(a)(3) as "requiring IPR petitions to identify 'with particularity ... the evidence that supports the grounds for the challenge to each claim'").

A petitioner may not rely on the Board to substitute its own reasoning to remedy the deficiencies in a petition. *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 364 (2018) ("Congress chose to structure a process in which it's the petitioner, not the Director, who gets to define the contours of the proceeding.")

Samsung's argument also improperly takes its own petition arguments out of context. The full relevant phrase is that "For the reasons discussed above, Ueda teaches a processor *programmed with the additional algorithm steps . . . .*" Appx345–346, Appx1992–1993. The petitions very clearly walk through the three added steps of the claim 3 means-plus-function construction and explain how Ueda purportedly teaches each step. Appx345–346, Appx1992–1993. In the context of a paragraph that purportedly explains why Ueda teaches these three steps, it is not at all unreasonable to believe that Samsung was arguing that Ueda taught a processor programmed with those steps—apart from whether it is actually true or not that Ueda teaches a processor. In other words, it was not unreasonable—let alone an abuse of discretion—to believe that Samsung meant precisely what its petition said.

Samsung argues that "the earlier discussion of the Fukumoto-based combinations relied exclusively on Fukumoto's CPU 113." Blue Br. 42. It is unclear what Fukumoto-based combinations or discussion thereof Samsung is referring to. The IPR2023-00992 petition alone presents 29 different combinations of Fukumoto with other references. Appx298–299. But nothing on the petition pages that Samsung's brief cites in support of this sentence even mentions Fukumoto's CPU 113. Blue Br. 42 (citing Appx341, Appx345, Appx1988, Appx1992).

Samsung cites to these same pages of the petitions as purportedly explaining "how Fukumoto's control component would receive output signals from Ueda's sensors and adjust operational control outputs based on the received signals." Blue Br. 43 (citing Appx341, Appx345, Appx1988, Appx1992). But the discussion of algorithmic steps on these pages points solely to teachings of Ueda. There is nothing on these pages suggesting that Fukumoto teaches a relevant algorithm, let alone that it teaches specific steps of converting a sensor output to an integer and comparing that integer to a specific value, as required under the Board's claim 3 construction. Appx39–41, Appx159–161, Appx341, Appx345, Appx1988, Appx1992.

**B.     Even as Samsung Seeks to Rewrite It, the Petition Failed to Show that Fukumoto, Ueda, or Their Combination Taught the Added Algorithm Steps**

Samsung's criticism of the Board for "overemphasis" on Ueda (Blue Br. 40) or "rigid interpretation" (Blue Br. 46) of the petitions would be more persuasive if a different interpretation of the petition yielded a teaching in the prior art of the added algorithm steps. It does not. Nothing in the petitions—or in Samsung's brief in this appeal—suggests that Fukumoto teaches conversion of a sensor output signal to an integer or comparison of that integer to a different value. To the extent that some modification of Fukumoto based upon Ueda would perform such integer-based steps, even if neither reference on its own does so, such a theory is completely absent from the petitions.

Indeed, the petitions fail to discuss the use of integers in the combinations at all. A search of the petitions for the word "integer" yields only four uses of the word in each petition, and in each instance it is part of a recitation of the steps of Samsung's proposed construction for the "control component" in claim 3. Appx302, Appx345, Appx1950, Appx1992. The petitions provide no explanation of *how* these integer-related steps of the

proposed construction are satisfied by the proposed combinations. In particular, the paragraphs of the petitions that specifically address the means-plus-function constructions for claim 3 never mention integers—expressly or by implication—except when reciting the required steps. Appx345–346, Appx1992–1993. Likewise, the expert declarations that these paragraphs cite never mention use of integers, as they merely parrot verbatim the arguments of the petitions. Appx669–670 (¶ 246), Appx2187 (¶ 242).

### III. The Board Correctly Recognized that the Petitions Failed to Provide Any Analysis of Claims 3–6 Under Ground 2D that Was Independent of the Analysis in Grounds 1D–F

Samsung's brief in this appeal devotes five pages to the Ground 2D challenge to claims 3–6 based on a combination of Fukumoto and Ueda. Blue Br. 48–53. This is more than five times the pages that Samsung devoted to Ground 2D in its petitions. Appx386–387, Appx2034. Indeed, each petition devoted just shy of a single page to address three entire grounds of invalidity (2D–2F), each challenging 4 different claims. Appx386–387, Appx2034. No doubt this brevity was a result of Samsung's decision to assert *30 distinct obviousness combination* against the

challenged claims of each petition. Appx298–299, Appx1945–1946. Regardless, it was Samsung's burden to identify "with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim." 35 U.S.C. § 312(a)(3). Moreover, the Patent Office's regulations require that "[t]he petition must specify where each element of the claim is found in the prior art patents or printed publications relied upon," 37 C.F.R. § 42.104(b)(4), and provide that the Board "may exclude or give no weight to the evidence where a party has failed to state its relevance or to identify specific portions of the evidence that support the challenge," 37 C.F.R. § 42.104(b)(5). To say Samsung's single page discussion in each petition satisfied the statutory standard or the regulatory standard for three grounds against each of four claims would be charitable in the extreme.

Remarkably, virtually the entirety of each of these pages in the petitions is devoted to the purported motivation to combine. *See* Blue Br. 52–53, arguing that the second sentence of each paragraph, beginning "[t]he same analysis," is directed to the motivation to combine analysis and not to "the substance." The only portions of these paragraphs that actually

address what the combination is are the phrase "[i]n Ground 1B (Section VII.B), Petitioners explain how Ueda teaches the additional limitations of dependent claims 3–6" and the sentence:

> In these combinations, the control component in each Ogusu-based combination would receive the output signals from Ueda's sensors and adjust the operational control outputs according to those signals.

Appx386–387, Appx2034. There is nothing else that explains what the system that results from the combination of Ogusu, Fukumoto, and Ueda would contain or that even attempts to show that it would satisfy the limitations of claim 3 or of any other claims. In particular, nothing in the petitions' discussion of Ground 2D even acknowledges the existence of the integer-related steps in the claim 3 construction of "control component," let alone argues that these steps would be present in any of the proposed combinations.

Presented with such a threadbare analysis, it was generous of the Board to even look back to the Ground 1B discussion and try to figure out how that would apply to the otherwise unanalyzed combination of Ogusu, Fukumoto, and Ueda, or to the other two combinations Samsung had lumped together with it—rather than simply excluding these arguments

as permitted under 37 C.F.R. § 42.104(b)(5). In doing so, the Board correctly found that the petitions had failed to demonstrate these combinations satisfied claim 3 or its dependent claims. Appx137, Appx210.

Samsung's brief argues that the Board should have gone further, digging on its own into the detailed disclosures of both Ogusu and Fukumoto, both under a theory that Ogusu's processor satisfied the "control component" limitations and an alternative theory that Fukumoto's processor satisfied those limitations. Blue Br. 49–50. This improperly places the burden of setting forth the validity challenge upon the Board, rather than where statute and this Court's caselaw places it: on the petitioner. *See* 35 U.S.C. § 312; 37 C.F.R. § 42.104; *Harmonic*, 815 F.3d at 1363; *SAS Inst.*, 584 U.S. at 364.

But even if the Board had taken up this burden of investigating an obviousness ground that the petition failed to substantively explain, it would not have found the claims obvious under Ground 2D. Even Samsung's brief in this appeal fails to point to anything in Ogusu, or in any of the other references in this combination, that teaches converting a sensor output to an integer or comparing that integer to a specific value, as required under the construction of claim 3.

## IV. The Board Properly Rejected Samsung's Reply Theories Concerning Purported Knowledge of a POSITA and Claim 3

### A. Samsung Asks This Court to Reverse the Board Based Upon Grounds that Were Properly Not Part of the Petitions' Obviousness Challenges

Samsung's brief raises arguments based upon "what POSITAs would have known at the time of the alleged invention" (Blue Br. 54), based upon the teachings of the Challenged Patents themselves (*id.* at 54–57), and based upon factual statements in the Supreme Court's opinion in *Gottschalk v. Benson* (*id.* at 55, 57). Two notable things are lacking for each of these categories of evidence. First, the brief lacks any citations to Samsung's petitions or reply briefs in these IPRs, showing that Samsung actually raised these arguments with the PTAB. (It did not.) Blue Br. 54–57. Just as importantly, the brief fails to show this knowledge or these teachings as they pertain to the integer-related algorithm steps were taught by the prior art that forms the grounds for the IPR challenges. *Id.* Indeed, Samsung acknowledges that "Ueda does not expressly disclose integers" (Blue Br. 62) and never attempts to show that Fukumoto or Ogusu discloses integers either.

Because these assertions about "what POSITAs would have known," about the teachings of the Challenged Patents, and about *Gottschalk* seek to show that the purportedly obvious combinations of references would contain limitations not taught in any of references themselves, they improperly seek to expand the grounds of obviousness beyond statutorily permitted statutory grounds of prior art patents or printed publications. 35 U.S.C. § 311(b) (limiting grounds to those "that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications"); 37 C.F.R. § 42.104(b)(4) ("[t]he petition must specify where each element of the claim is found in the prior art patents or printed publications relied upon"); *Qualcomm Incorporated v. Apple Inc.*, 134 F.4th 1355, 1365 (Fed. Cir. 2025) (rejecting Board's position that "an IPR petition may 'rely on' [applicant admitted prior art] to 'supply a missing claim limitation' to show 'the general knowledge of a skilled artisan' when assessing obviousness"). Samsung should not be permitted to make these untimely arguments to cobble together an obviousness challenge that statute and the Patent Office's rules prohibited it from raising in its petitions.

### B. Dr. Wolfe's Untimely and Conclusory Opinions in Reply Concerning Want a "POSITA Would Have Understood" Fail to Demonstrate that the Prior Art References in Combination Teach the Steps Required by Claim 3

Samsung points to purportedly "uncontested testimony" of their expert Dr. Wolfe and makes much of Resonant "not provid[ing] any evidence to rebut Dr. Wolfe's testimony in its Sur-Replies." Blue Br. 57–58. Of course, the reason that Resonant did not submit evidence specifically "to rebut" this testimony is that it was raised for the first time in reply, and the Board's rule prohibit introduction of new evidence in a sur-reply. 37 C.F.R. § 42.23(b).

Even in the reply declaration, Dr. Wolfe's sole opinions addressing integers are in the following paragraph:

> Furthermore, as a POSITA would have understood, the only viable formats for digitally representing the signals from the output detector and the position detector would be either (1) an integer or (2) a fraction. And in the context of converting analog to digital signals, an integer would almost always be the preferred choice. Converting sensor outputs to integers under these circumstances would amount to choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success.

Appx3234, ¶ 17. This conclusory opinion is devoid of any citations to evidence, let alone evidence that a POSITA would understand the actual

prior art references that constitute the asserted grounds teach any of this or that a POSITA would reach these conclusions based upon reading the references in combination. At best, this opinion presents an untimely and "entirely new rationale to explain why one of skill in the art would have been motivated to combine" in a reply. *Intelligent Bio-Systems*, 821 F.3d at 1370. It also represents an improper reliance upon "the general knowledge of a skilled artisan" to supply a limitation missing from the prior art references, contrary to the statutory and regulatory requirements that the petition be grounded in prior art "patents or printed publications." 35 U.S.C. § 311(b); 37 C.F.R. § 42.104(b)(4); *Qualcomm*, 134 F.4th at 1365.

It thus was proper for the Board to disregard this new theory from Samsung's replies altogether. Appx91–92, Appx183–184. Nonetheless, the Board did actually consider the substance of the new theory and Dr. Wolfe's declaration. *Id.* Dr. Wolfe's declaration itself acknowledged that conversion to a digital value does not necessarily involve conversion to an integer, as conversion to "a fraction" is also a possibility. Appx3234, ¶ 17. Accordingly, the Board found that even if the combination of references

taught conversion of Ueda's analog signals to a digital value under Samsung's reply theories, that was not sufficient to teach conversion specifically to an integer value. Appx92, Appx184. This finding is supported by substantial evidence—namely the sworn reply declaration of Samsung's own expert—and accordingly should be affirmed.

### V. The Board Properly Rejected New Arguments Made on Reply Based Upon Purported Evidence of Prior Art Outside of the Patents and Printed Publications, but to the Extent Such Rejection Was Erroneous It Was Harmless Error as the Board also Correctly Rejected These Arguments on Their Merits

Samsung's brief makes much of the Board's findings that certain arguments in its replies were impermissible new arguments. Blue Br. 60–65. But the only reply argument identified by Samsung purportedly excluded by the Board is the argument based upon Dr. Wolfe's reply declaration, discussed at length above. Blue Br. 63 (citing Appx3233, ¶ 16).[3]

---

[3] Samsung's statement of the case also points to deposition testimony of Resonant's expert that a magnitude in Ueda "could happen to fall upon an integer value" as something purportedly disregarded by the Board from Samsung's replies. Blue Br. 29 (citing Appx3310–3311, 75:24–76:7). Samsung fails to address this testimony in its argument section or otherwise to explain how that testimony would actually show motivation to combine the references or otherwise show obviousness, and any such argument based upon Dr. Goossen's testimony is therefore waived. Moreover, as Samsung itself acknowledges repeatedly, Ueda

However, as explained above, while the Board correctly found that this argument was an untimely argument on reply, the Board also expressly considered the argument and rejected it on its merits. Appx91–92, Appx183–184. The Board's determination that raising this argument on reply was correct, both because the argument provided a new rationale for motivation to combine and because it expanded to grounds to include "knowledge of a skilled artisan" outside of the proper grounds of patents or printed publications. *Intelligent Bio-Systems*, 821 F.3d at 1370; *Qualcomm*, 134 F.4th at 1365. However, because the Board actually considered the reply arguments and rejected them on substance, to the extent that the Board's determination the argument was untimely was in error, it was harmless error.

Samsung's cases do not support the argument that it was an abuse of discretion to reject the reply arguments that were based on Dr. Wolfe's new declaration. *Apple Inc. v. Andrea Electronics Corporation*, 949 F.3d

---

discloses analog signals and not integers. *E.g.*, Blue Br. 28, 59, 62. Accordingly a signal in Ueda that "happen[s] to fall" on an integer value would not satisfy the claim 3 steps of converting a sensor output to an integer or comparing that integer to a specific value.

697, 705 (Fed. Cir. 2020) ("The Board's determinations that a party exceeded the scope of a proper reply are reviewed for abuse of discretion.") In *Apple*, for example, the purportedly new arguments in reply were based upon discussion of the same algorithm, within the same prior art reference, as relied upon in the petition, in order to rebut the patent owner's arguments about that algorithm. *Id.* at 706. In *Ericsson*, the reply arguments concerned whether there was a substantial difference between the technique described in the portions of the prior art reference cited in the petition and the technique that was claimed in the challenged patent. *Ericsson Inc. v. Intellectual Ventures I LLC*, 901 F.3d 1374, 1380 (Fed. Cir. 2018).

Here, the reply argument was not simply citing to other portions of the Ueda or other prior art references to support an argument already made in the petitions about the teachings of those prior art references concerning use of integers. Indeed, the petitions say nothing at all about the references teaching use of integers or knowledge of a POSITA concerning conversion to or comparisons of integers. Appx345–346, Appx1992–1993. Rather, the reply relies upon an entirely new category of purported evidence of prior art, namely the conclusory declaration of

Dr. Wolfe concerning what "a POSITA would have understood" concerning possible ways of representing an analog signal as a digital value. Nothing in *Apple* or *Ericsson* suggests this sort of new argument should be permitted. Rather, this is more akin to the situations in *Ariosa* and *Intelligent Bio-Systems*, where the Federal Circuit found it was proper to exclude reply arguments based upon new references or previously unidentified portions of references not presented in the petition. *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1367 (Fed. Cir. 2015); *Intelligent Bio-Systems*, 821 F.3d at 1370–71.

## VI. The Board's Factual Findings Concerning Combining Distinct Embodiments of Fukumoto to Satisfy Claim 9 Are Supported by Substantial Evidence, and Samsung's Untimely Reliance on Additional Portions of Fukumoto Does Not Demonstrate Otherwise

The Board's factual findings concerning the teachings of Fukumoto concerning its Figures 3 and 83 are supported by substantial evidence and should be affirmed. Samsung's brief quotes extensively from lines 48:56–49:14 of Fukumoto. Blue Br. 66; Appx826–827. But Samsung's papers in at the PTAB did not cite to these lines or argue that they supplied the required motivation to combine. *See* Appx3207, Appx3409. For exam-

ple, Samsung's brief refers to Fukumoto's teachings of "a piezoelectric element," but the word "piezoelectric" and the concept of piezoelectricity appear nowhere in Samsung's arguments concerning Fukumoto below.

The Board correctly addressed the portions of Fukumoto that Samsung cited in its briefs below and made findings supported by substantial evidence. Appx75 (addressing arguments in Appx3207), Appx176 (addressing arguments in Appx3409). Samsung faults these findings as purportedly overlooking teachings in Fukumoto lines 48:58–49:14. Blue Br. 67 (citing Appx826–827). But as noted above, these additional lines of Fukumoto were never cited by Samsung before the PTAB. This Court should not consider a new theory of motivation to combine raised for the first time on appeal.

Even if reliance on lines 48:58–49:14 were not untimely, they do not show a clear teaching to combine the specific features of Figures 3 and 83 as proposed by Samsung or otherwise render the Board's findings unsupported. At most they show that permanent magnet embodiments such as Figure 3 and electrostatic embodiments such as *Figure 82* are alternative ways of constructing an oscillatory actuator under the teachings of

Fukumoto. Appx826–827. They do not suggest mixing and matching features of Figures 3 and *83*, let alone doing in the specific way proposed by Samsung. The Board's findings concerning motivation to combine these figures should be affirmed.

## VII. The Board Correctly Found a Lack of Motivation to Combine Fukumoto, Dong, and Ogusu as Proposed to Satisfy Claims 14 and 19

Claims 14 and 19 challenged under the combinations including Fukumoto, Dong, and Ogusu each require "flux paths comprising a paramagnetic material that is shaped and positioned to reduce the reluctance of one or more magnetic circuits." Appx246, Appx278. As Resonant pointed out to the Board, none of the three references mentions reluctance or paramagnetism. *See* Appx0115. At most, the Dong reference discloses use of a counterweight made of tungsten, and tungsten happens to be a paramagnetic material—a fact which Dong does not mention or make any apparent use of. Rather, as the Board found, Dong teaches use of tungsten to provide greater mass to the moving structure, in order "to strength the vibrating force." Appx118 (citing Appx931), Appx199 (same).

An obviousness determination requires finding that a POSITA would have been motivated to modify or combine teachings in the prior art. *In*

*re Stepan Co.*, 868 F.3d 1342, 1345–46 (Fed. Cir. 2017). Obviousness concerns "whether a skilled artisan not only could have made but would have been motivated to make the combinations or modifications of prior art to arrive at the claimed invention." *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1073 (Fed. Cir. 2015). The "mere fact that these possible arrangements existed in the prior art" does not provide a motivation to substitute the arrangement in one prior art embodiment with the arrangement in another. *Virtek Vision Int'l ULC v. Assembly Guidance Sys., Inc.*, 97 F.4th 882, 887 (Fed. Cir. 2024).

The Board considered Samsung's arguments concerning the motivation to combine for these grounds and rejected them, under reasoning supported by substantial evidence. Appx117–121, Appx194–201. Samsung's brief cited *ZyXEL*, but the cited portion of that opinion is inapposite. Blue Br. 68. *ZyXEL Commc'ns Corp. v. UNM Rainforest Innovations*, 107 F.4th 1368, 1380 (Fed. Cir. 2024). The Federal Circuit in *ZyXEL* held that the prior art reference itself "does not need to explicitly articulate or express why its teachings are beneficial." *Id.* at 1380. But there is no indication that the Board imposed such a requirement that the reference "explicitly articulate or express" a benefit. Rather, the

Board expressly framed the issue as the issue as "whether an ordinarily skilled artisan, aware of Dong's paramagnetic counterweight, would have considered it beneficial to include that counterweight in Fukumoto's oscillatory actuator." Appx120, Appx200. The Board found that the record failed to demonstrate this and thus failed to establish a motivation to combine. Appx120, Appx200–201. This framing and conclusion are entirely consistent with *ZyXEL*.

The only evidence that Samsung's brief points to as supporting a motivation to combine is deposition testimony of Resonant's expert Dr. Goossen. Blue Br. 68. But the Board considered Dr. Goossen's testimony in its final written decisions and correctly concluded that this testimony failed to establish a motivation to combine. Appx118, Appx197. The sole testimony that Samsung now cites is the following exchange with Dr. Goossen:

> Q. Okay. But if not for magnetic reluctance, why would paramagnetic materials have been very useful in magnetic circuits?
>
> A. Good question. You know, it's only in as much that they — in some state of a magnetic circuit, they can provide a path for the magnetic field. And then in another state, they would not retain magnetism. I can see where that could be useful. But that's — I can't qualify that sentence. I was just, you know, somewhat struck by the concept shown in Elenga.

Appx3337–3338 (102:20–103:5). This testimony says nothing about what a POSITA would have known or recognized, let alone what they would have been motivated to do. Rather, the testimony is about the benefits of "the concept shown in Elenga," i.e. in the challenged patents themselves. *See* Appx217, Appx248.

Samsung's citation to *Intel* fails to demonstrate any flaw in the Board's reasoning. Blue Br. 68; *Intel Corporation v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1380 (Fed. Cir. 2023). *Intel* addresses the situation where "there's a known technique to address a known problem." *Id.* While it does not refer to "benefit," "address[ing] a known problem" is a form of benefit. As the Board correctly found, the petitions failed to demonstrate that a POSITA would have recognized a benefit from the proposed combinations, whether that benefit was addressing a known problem or otherwise. Appx117–121, Appx194–201. To the extent that *Intel* did set forth a way of establishing a motivation to combine without any need for a POSITA to recognize a benefit, Samsung failed to present such an "address[ing] a known problem" theory of motivation in the proceedings at

the PTAB. Samsung neither cited the *Intel* case nor mentioned addressing "a known problem" in its analysis of these grounds. *E.g.*, Appx362–365, Appx2008–2012.

Although the Board fully considered Dr. Goossen's testimony as a possible basis for a motivation to combine, it properly could have refused to do so. Because a motivation to modify or combine is part of the prima facie case for obviousness that must be set forth in the petition, a petitioner should not be permitted to present "an entirely new rationale to explain why one of skill in the art would have been motivated to combine" in its reply. *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1370 (Fed. Cir. 2016). Dr. Goossen's deposition testimony and any motivation to combine theory that is based upon it was first presented in the reply. Even if Dr. Goossen's testimony were sufficient to show the Board's findings concerning motivation to combine lack the support of substantial evidence—which it is not—it would not be proper to vacate the Board's determination based solely on a motivation to combine theory grounded in evidence first presented in reply.

## CONCLUSION

This Court should expressly construe the term "control component" in the independent claims of the '081 and '830 patents, either adopting the Board's construction or adopting another construction such as that adopted by the district court in the parallel litigation. To the extent the Court adopts the district court construction, the Board's findings that certain claims of the challenged patents are unpatentable should be reversed. Regardless of the outcome on claim construction, the Board's findings that the remaining claims of the patents were not shown to be unpatentable should be affirmed, as these findings were supported by substantial evidence and there was no abuse of the Board's discretion.

Dated: September 19, 2025     Respectfully submitted,

*/s/ Neil A. Rubin*
Reza Mirzaie
rmirzaie@raklaw.com
Neil A. Rubin
nrubin@raklaw.com
Kristopher R. Davis
kdavis@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025
Telephone: 310-826-7474

Attorneys for Patent Owner-Appellee,
RESONANT SYSTEMS, INC.

## CERTIFICATE OF COMPLIANCE

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 8,344 words.

Dated: September 19, 2025          _/s/ Neil A. Rubin_____
                                   Neil A. Rubin